UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZHENG DONG,

                            Plaintiff,

            -against-

CITY UNIVERSITY OF NEW YORK,
BOARD OF TRUSTEES OF CUNY, CITY
COLLEGE OF NEW YORK, CUNY
SCHOOL OF MEDICINE, and CARMEN
RENEE GREENE in her official and
individual capacities, and ELLIOT R.
GOODMAN in his official and individual
capacities,

                            Defendants.

---

Case No. 1:25-cv-01332 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Zheng Dong ("Plaintiff" or "Dong") brings this action against Defendants City University of New York ("CUNY"), Board of Trustees of CUNY (the "Board"), City College of New York (the "City College"), CUNY School of Medicine ("CUNY Medicine") (collectively, the "CUNY Defendants"), Elliot R. Goodman ("Goodman"), and Carmen R. Greene[1] ("Greene").  Before the Court are two motions to dismiss: (1) the CUNY Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), and (2) Defendant Greene's motion to dismiss under Rule 12(b)(6).[2]  For the following reasons, the Court GRANTS both motions.

---

[1] There is a discrepancy in the spelling of Defendant Greene's last name.  The Amended Complaint's case caption spells her name as "Greene," but otherwise the parties spell her name as "Green."  *Compare* Dkt. 38 at 1, *with id.* ¶ 15, *and* Dkt. 63 at 1, *and* Dkt. 72 at 1.  The Court will continue to spell her name in accordance with the case caption.

[2] Defendant Goodman has not moved to dismiss or otherwise appeared in this action.

**BACKGROUND**

The following facts are drawn from the Amended Complaint, Dkt. 38 (the "Amended Complaint" or "Am. Compl."), and taken as true for purposes of this motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### I.    Factual Background

This dispute arises from the termination of Dong's employment at CUNY Medicine. In January 2018, Dong, a medical doctor, was hired by CUNY Medicine as an adjunct medical lecturer/professor. Am. Compl. ¶¶ 11, 21. He would later be appointed as Course Co-Director of the Physician Assistant Anatomical Science Program in October 2023. *Id.* ¶ 22.

On February 12, 2024, Goodman, the then-Director for Surgical Education, emailed Dong and informed him that his contract would not be renewed due to his recent misdemeanor conviction. *Id.* ¶¶ 16, 26. The next day, Dong spoke with Goodman on the phone, who confirmed that Dong's position at CUNY Medicine was being terminated and that his contract would not be renewed due to his misdemeanor conviction. *Id.* ¶ 28. Goodman further confirmed that Greene, the Dean of CUNY Medicine, had personally ordered this employment decision. *Id.* ¶ 29. Dong tried to explain that he was seeking expungement of his misdemeanor and "was about to be issued a certificate of relief of disabilities with respect to [the] misdemeanor," *id.* ¶ 31, but Goodman told him that the decision was final and would not be reconsidered, *id.* ¶ 32. Greene's decision, according to the Amended Complaint, was made without considering mitigating circumstances or a pre-termination hearing as required by New York Law. *Id.* ¶¶ 33-34, 44-46.

In May 2024, Dong "received his certificate of relief from disabilities and requested that he be rehired to his position for 2024 and 2025." *Id.* ¶ 36. Greene denied this request, stating that Dong would not be considered for employment due to his prior criminal conviction. *Id.*

¶ 37. Dong was further advised that any further applications for employment at CUNY Medicine would be rejected based on the misdemeanor conviction. *Id.* ¶ 40.

## II.    Procedural Background

On February 13, 2025, Dong commenced this action against Defendants CUNY, the Board, City College, CUNY Medicine, and Goodman, alleging that his termination violated his federal constitutional rights, and state and city anti-discrimination laws. Dkt. 1 (the "Complaint" or "Compl."). Dong later voluntarily dismissed Goodman, leaving only the CUNY Defendants. Dkt. 23. The CUNY Defendants then moved to dismiss the Complaint, arguing that the Court lacked subject matter jurisdiction because they are entitled to sovereign immunity. Dkt. 28; Dkt. 29 at 3-4.

Instead of opposing the motion, on July 28, 2025, Dong filed the Amended Complaint, adding Defendants Goodman and Greene as well as additional facts. Am. Compl. at 1. In the Amended Complaint, Dong asserts Defendants' termination of his employment gives rise to four claims: (1) violation of his constitutional due process rights under 42 U.S.C. § 1983, *id.* ¶¶ 50-54; (2) violation of his constitutional equal protection rights under 42 U.S.C. § 1983, *id.* ¶¶ 55-58; (3) discrimination in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, *id.* ¶¶ 59-62; and (4) discrimination in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, *id.* ¶¶ 63-66.

On September 15, 2025, the CUNY Defendants moved to dismiss all the claims under Rule 12(b)(1) for lack of subject matter jurisdiction. Dkt. 42 ("CUNY Mot."); Dkt. 43 ("CUNY Br."). Dong filed an opposition brief on December 15, 2025, Dkt. 51 ("CUNY Opp."), and the CUNY Defendants replied on January 21, 2026, Dkt. 61 ("CUNY Reply").

Defendants Greene and Goodman had not yet been served when the CUNY Defendants filed their motion to dismiss. Eventually, Goodman was served on November 18, 2025, Dkt. 53,

but has not responded to the Amended Complaint or otherwise appeared in this action.  Greene was served on December 19, 2025, Dkt. 58, and subsequently moved to dismiss all of the claims under Rule 12(b)(6), Dkt. 62 ("Greene Mot."); Dkt. 63 ("Greene Br.").  Dong opposed this motion on April 8, 2026, Dkt. 72 ("Greene Opp."), and Greene replied on May 5, 2026, Dkt. 73 ("Greene Reply").  Both motions are therefore fully briefed.

## LEGAL STANDARD

Under Rule 12(b)(1), a claim may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it."  *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *see also Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.").

In a Rule 12(b)(1) motion, "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction."  *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024) ("A Rule 12(b)(1) motion may be either facial or fact-based.").  When a defendant challenges the legal sufficiency, that challenge is "'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' [and thus] plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading."  *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)); *accord Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 281 (S.D.N.Y.

4

2024). However, when challenging the factual sufficiency of jurisdiction, the defendant may do so by "proffering evidence beyond the [p]leading." *Carter*, 822 F.3d at 57. A plaintiff must then "come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (omission in original) (quoting *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

Under Rule 12(b)(6), a "complaint may be dismissed to the extent that it 'fail[s] to state a claim upon which relief can be granted.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)). On a motion seeking such dismissal, the Court "accept[s] the material facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 162 (2d Cir. 2025) (quoting *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 140 (2d Cir. 2023)). However, the Court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint is also deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

## DISCUSSION

The CUNY Defendants argue that the Court should dismiss the suit against them for lack of subject matter jurisdiction because they are immune from suit under the Eleventh Amendment.  CUNY Br. at 1.  Greene argues that the Court should dismiss the claims against her because Dong fails to state a claim for a federal constitutional violation, and the Court should decline supplemental jurisdiction over the remaining state and city law claims.  Greene Br. at 1-2.  The Court addresses each argument in turn.

### I.    CUNY Defendants' Rule 12(b)(1) Motion to Dismiss

The CUNY Defendants argue that this Court lacks subject matter jurisdiction because they are entitled to sovereign immunity under the Eleventh Amendment, and such immunity has not been abrogated by Congress or waived by the State of New York.  CUNY Br. at 4-6.  In his opposition, Dong does not refute or otherwise address this argument with respect to CUNY, the Board, and the City College, and instead only argues that CUNY Medicine is not entitled to sovereign immunity.  *See generally* CUNY Opp.  For the following reasons, the Court will grant the motion to dismiss the CUNY Defendants.

### A.    Legal Framework

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "Although by its terms the Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States."  *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).  "Stated as simply as possible, the Eleventh Amendment means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their

Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). "And the Eleventh Amendment extends immunity 'not only to a state, but also to entities considered arms of the state.'" *Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 (2d Cir. 2004) (per curiam) (quoting *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001)), *supplemented sub nom.*, *Clissuras v. City of Univ. of New York*, 90 F. App'x 566 (2d Cir. 2004) (summary order). However, "[i]t does not extend to 'lesser entities,' such as 'municipal corporations or other governmental entities' that are not 'arms of the State.'" *Galette v. New Jersey Transit Corp.*, 146 S. Ct. 854, 865 (2026) (alterations adopted) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)).

"Whether an entity is 'an arm of the State . . . is a question of federal law' that 'can be answered only after considering the provisions of state law that define the agency's character.'" *Id.* (omission in original) (quoting *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997)). As the Supreme Court recently articulated in *Galette*, courts addressing this issue must "examine[] whether the State structured the entity as a legally separate entity liable for its own judgments." *Id.* at 868. When making this determination, the Court will consider three factors. First, courts consider "whether the State structured the entity as a legally separate entity." *Id.* "The clearest evidence that a State has created a legally separate entity is that it created a corporation with the traditional corporate powers to sue and be sued, hold property, make contracts, and incur debt." *Id.* Second, courts evaluate "whether the entity is liable for its own judgments or whether the State is formally liable, *i.e.*, whether 'any judgment' against the entity 'must be satisfied out of the state treasury.'" *Id.* at 869 (quoting *Hess v. Port Auth. Trans-*

7

*Hudson Corp.*, 513 U.S. 30, 51 (1994)).  "If the State is formally liable for judgments against an entity, that entity is more likely to be an arm of the State because its liabilities necessarily undermine the State's ability to make choices about how to allocate the [State's budget]."  *Id.* Finally, courts can consider "the degree of control the State exerts over the entity, but courts should do so with caution."  *Id.*  Control, however, "is not especially probative because 'ultimate control of every state-created entity resides with the State,' even those that are not arms of the State."  *Id.* (quoting *Hess*, 513 U.S. at 47).

**B.      Claims Against CUNY, the Board, and the City College**

As a threshold matter, Dong's claims against Defendants CUNY, the Board, and the City College, are dismissed because Dong abandoned them by failing to respond to their arguments of sovereign immunity.  In his opposition to the CUNY Defendants' motion to dismiss for lack of subject matter jurisdiction, Dong argued only that Defendant CUNY Medicine is not entitled to sovereign immunity.  *See generally* CUNY Opp.  "It is well settled in the Second Circuit 'that [a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute[s] an abandonment of those claims.'"  *New York State Ct. Clerks Ass'n v. Unified Ct. Sys.*, 25 F. Supp. 3d 459, 469 (S.D.N.Y. 2014) (first alteration in original) (quoting *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014)) (collecting cases); *accord Miller-Sethi v. City Univ. of New York*, No. 21-cv-08591 (JPO), 2023 WL 419277, at *12 (S.D.N.Y. Jan. 26, 2023); *cf. Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally . . . a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others.").  Notwithstanding the merits of the defendants' arguments on a motion to dismiss, a plaintiff's abandonment of claims "provides an independent basis for dismissal."  *Clerks Ass'n*, 25 F. Supp. 3d at 469 (citation omitted); *see also Cantey v. Ctr. for Emp. Opportunities, Inc.*, No. 25-cv-04843 (LJL), 2026 WL 923844, at *3 n.4 (S.D.N.Y. Apr. 6, 2026) (deeming plaintiffs'

claim abandoned when they failed to respond to defendant's argument that the claim was not properly pleaded); *Miller-Sethi*, 2023 WL 419277, at \*12 (dismissing plaintiff's NYCHRL claims on grounds of abandonment when plaintiff "offer[ed] no discussion of [d]efendants' sovereign immunity defense, despite that defense being a substantial part of [d]efendants' briefing").  Thus, Dong has abandoned his claims against CUNY, the Board, and the City College.

Even if Dong had not abandoned his claims against CUNY, the Board, and the City College, the claims would still be dismissed because it is well established that each Defendant is immune from suit under the Eleventh Amendment.  *See, e.g.*, *Ndemenoh v. City Univ. of New York*, No. 20-cv-04492 (LLS), 2020 WL 4547302, at \*5 (S.D.N.Y. Aug. 4, 2020) ("[U]nder the Eleventh Amendment, CUNY and City College are immune from liability[.]"); *Shibeshi v. City Univ. of New York*, 531 F. App'x 135, 135 (2d Cir. 2013) (summary order) (affirming dismissal of claims against CUNY on Eleventh Amendment grounds); *Husain v. Springer*, 193 F. Supp. 2d 664, 668 (E.D.N.Y. 2002) (dismissing claims against CUNY and the Board because those institutions are entitled to state sovereign immunity), *aff'd*, 494 F.3d 108 (2d Cir. 2007).

### C.    Claims against CUNY Medicine

Dong's claims against CUNY Medicine are also barred by sovereign immunity.  Under New York Law, CUNY Medicine is a "senior college" because it is "an institution of higher education in the city of New York, which is governed and administered by the board of trustees, including, but not limited to, a professional or graduate institution, an institution for research, [and] an administrative institution."  N.Y. Educ. Law § 6202(5).  The Second Circuit has held that a CUNY senior college is an "arm of the state" for purposes of sovereign immunity. *Clissuras*, 359 F.3d at 82-83; *see also Skalafuris v. City of New York*, 444 F. App'x 466, 468 (2d Cir. 2011) (summary order) ("The 'senior colleges' of City University of New York are arms of

9

the state for purposes of sovereign immunity[.]").  The Second Circuit reached this conclusion because, under New York Law, "the state is responsible for paying money judgments entered against CUNY senior colleges," *Clissuras*, 359 F.3d at 82 (citing N.Y. Educ. Law § 6224(6)), and "'ultimate control over how CUNY is governed and operated' rests with the state," *id.* (quoting *Becker v. City Univ. of New York*, 94 F. Supp. 2d 487, 490 (S.D.N.Y. 2000)).  Although *Clissuras* predates the Supreme Court's recitation of the sovereign immunity test in *Galette*, *Clissuras* considered similar factors, including the State of New York's legal obligation to pay a judgment against a CUNY senior college.

Dong argues that CUNY Medicine is not entitled to sovereign immunity because it is not a senior college and is instead an independent institution.  *See* Am. Compl. ¶ 20 ("CUNY School of Medicine is not and has not been under the control of any 'senior college' of CUNY, nor a subdivision of any senior college of CUNY."); CUNY Opp. at 5-7.  In support of this, he points to statements by Governor Kathy Hochul and CUNY's Chancellor, wherein they discuss CUNY Medicine being "transitioned to a standalone institution."  Am. Compl. ¶ 19.  According to Dong, the statements alleged in the Amended Complaint demonstrate that CUNY Medicine is no longer a senior college and is not entitled to state sovereign immunity.  CUNY Opp. at 5, 7-8. The Court is not persuaded.

To start, the Court need not accept conclusory assertions in the Amended Complaint. *See, e.g.*, *Pagan v. Rsch. Found. of the City Univ. of New York*, No. 24-cv-06500 (RA), 2025 WL 2793685, at *3 (S.D.N.Y. Oct. 1, 2025) ("[A] plaintiff must 'allege facts that affirmatively and plausibly suggest that' the court has subject matter jurisdiction, and 'courts need not credit a complaint's conclusory statements that lack factual support.'" (quoting *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021))); *Avila v. 1212 Grant Realty, LLC*, No. 18-cv-07851 (LGS), 2019 WL 4805333, at *1 (S.D.N.Y. Sept. 30, 2019) ("[A] court need not accept a

complaint's allegations when they are contradicted by documents properly before the court."). As the CUNY Defendants point out, the Amended Complaint cherry-picks statements from a press release, which, when read in its entirety, demonstrates that CUNY Medicine remains a senior college.  CUNY Br. at 5-6; CUNY Reply at 6-7.

Given that the Amended Complaint references statements from this press release, *see* Am. Compl. ¶¶ 19-20, it is incorporated by reference into the Amended Complaint and thus properly considered on a motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("'[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference,' as well as any 'document integral to the complaint' because 'the complaint relies heavily upon its terms and effect[.]'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *Mitchell v. Home*, 377 F. Supp. 2d 361, 367 n.1 (S.D.N.Y. 2005) (considering a press release on a motion to dismiss because it was referenced in the amended complaint).

According to the press release, CUNY Medicine had been a "constituent school of The City College of New York," but was henceforth "elevate[d] to a graduate-level institution." Press Release, Office of Governor Kathy Hochul, *Gov. Hochul Announces CUNY School of Medicine Elevated to Independent College* (Nov. 19, 2024), https://www.governor.ny.gov/news/governor-hochul-announces-cuny-school-medicine-elevated-independent-college.  It remained part of CUNY, and was brought under the "auspices of the CUNY Graduate Center," *id.*, which itself has been considered a senior college for the purposes of state sovereign immunity, *see, e.g.*, *Badger v. CUNY Graduate Ctr.*, No. 22-cv-09784 (ER), 2023 WL 35223, at *5 (S.D.N.Y. Jan. 4, 2023) ("As a senior college, the CUNY Graduate Center is an arm of the State of New York.").  As such, CUNY Medicine remains "a professional

11

or graduate institution" which is "governed and administered by the [CUNY] board of trustees," and thus a senior college. N.Y. Educ. Law § 6202(5). It is therefore entitled to sovereign immunity.

The cases Dong cites — *Mancuso v. New York State Thruway Auth.*, 86 F.3d 289 (2d Cir. 1996), *Blumberg v. Nassau Health Care Corp.*, 378 F. Supp. 2d 122 (E.D.N.Y. 2005), and *Pikulin v. City Univ. of New York*, 176 F.3d 598 (2d Cir. 1999) (per curiam) — are inapposite. In *Mancuso* and *Blumberg*, the defendants were public benefit corporations, and the State of New York was not legally responsible for any judgments against them. *See Mancuso*, 86 F.3d at 296 ("[T]here can be no doubt that the state is not legally obligated to pay for the Thruway Authority's debts."); *Blumberg*, 378 F. Supp. 2d at 126-27 (finding that under state law, the defendant medical center, "and not the State or Nassau County, is solely responsible for the payment of any municipal bonds that it is authorized to issue," and State law allows defendant to "sue or be sued"). *Pikulin* involved a community college, not a senior college. *See Clissuras*, 359 F.3d at 81-82 (citing *Pikulin* as "a case involving a CUNY community college"). Community colleges are expressly carved out of New York's definition of senior colleges, N.Y. Educ. Law § 6202(5) (defining "senior college" as "not including a community college"), and have a relationship with the state that is distinct from senior colleges, *Clissuras*, 359 F.3d at 82 n.6 (noting "claims against CUNY *community* colleges, such as the one at issue in *Pikulin*, are [instead] governed by Sections 50-e & 50-i of New York's General Municipal Law"); *see also Obilo v. City Univ. of City of New York*, No. 01-cv-5118 (DGT), 2003 WL 1809471, at *14 (E.D.N.Y. Apr. 7, 2003) ("The distinction between this case and *Pikulin* is that this case involves a CUNY senior college, while *Pikulin* involved a CUNY community college. This distinction is important because senior colleges enjoy a different relationship with the state than do community colleges.").

Given that CUNY Medicine is entitled to state sovereign immunity, the only remaining questions are whether the State of New York waived sovereign immunity or Congress abrogated such immunity. They did not. Dong brings four claims, two under 42 U.S.C. § 1983, and the others under the NYSHRL and NYCHRL. Am. Compl. ¶¶ 50-66. It is well established that Congress did not abrogate state sovereign immunity under 42 U.S.C. § 1983, and that New York has not consented to suit under § 1983. *See, e.g.*, *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) ("It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." (citations omitted)); *accord Doherty v. Bice*, No. 18-cv-10898 (NSR), 2020 WL 5548790, at *6 (S.D.N.Y. Sept. 16, 2020). Furthermore, New York did not waive its sovereign immunity under the NYSHRL and NYCHRL. *See Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) ("The City of New York does not have the power to abrogate the immunity of the State, and we have found no evidence that the State has consented to suit in federal court under the NYCHRL."); *Collins v. City Univ. of New York*, No. 21-cv-09544 (NRB), 2023 WL 1818547, at *4 (S.D.N.Y. Feb. 8, 2023) (finding that "New York has not consented to suit under the State or City Human Rights Law" and collecting cases); *Ross v. State of New York*, No. 15-cv-03286 (JPO), 2016 WL 626561, at *3 (S.D.N.Y. Feb. 16, 2016) (dismissing claims under NYCHRL and NYSHRL because "[t]he Eleventh Amendment . . . bars claims against the state under the NYCHRL and . . . the NYSHRL").

Accordingly, CUNY Medicine is entitled to state sovereign immunity as to all of Dong's claims.

## II. Greene's Rule 12(b)(6) Motion to Dismiss

Turning next to Greene's motion to dismiss, Greene moves to dismiss all claims against her under Rule 12(b)(6). First, Greene argues that Dong's due process claim fails because he had

13

an adequate post-deprivation remedy through an Article 78 proceeding.  Greene Br. at 5-6.

Second, she argues that Dong's equal protection claim fails because he was not a member of a

suspect class.  *Id.* at 6-7.  Third, in the alternative to the first two arguments, Greene contends

that she is entitled to qualified immunity.  *Id.* at 7-8.  Lastly, she argues that the Court should

either decline to exercise supplemental jurisdiction over the remaining state and city law claims

or, if it chooses to exercise it, dismiss those claims on the merits.  *Id.* at 8-10.  The Court

addresses each argument in turn.

### A.      Due Process Claim

Dong's first Section 1983 claim alleges that Greene violated his constitutional right to

due process by "fail[ing] to provide [him] with notice or an opportunity to be heard prior to his

termination."  *See* Am. Compl. ¶¶ 51-54.  Greene argues that Dong's due process claim should

be dismissed because he had an adequate post-deprivation remedy "via an Article 78

proceeding."  Greene Br. at 5.  The Court agrees with Greene.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State

shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S.

Const. amend. XIV, § 1.  "The essential requirements of due process . . . are notice and an

opportunity to respond."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  To

state a due process claim, a Plaintiff must allege "(1) that [d]efendant[] deprived him of a

cognizable interest in life, liberty, or property, (2) without affording him constitutionally

sufficient process."  *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quotation marks and

citation omitted); *accord Doherty*, 2020 WL 5548790, at *4.

Dong fails to plausibly allege that he was denied constitutionally sufficient process.  "[I]n

evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished

between (a) claims based on established state procedures and (b) claims based on random,

14

unauthorized acts by state employees.'" *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).  Where the alleged deprivation of life, liberty, or property resulted from "random, unauthorized acts by state employees," due process is satisfied "so long as the State provides a meaningful postdeprivation remedy." *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880.  It is well established that an Article 78 proceeding is an adequate post-deprivation remedy for purposes of due process.  *See, e.g.*, *id.* at 881 ("Article 78 proceeding is a perfectly adequate postdeprivation remedy in the present situation."); *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) (holding plaintiff failed to state a claim for a Due Process Clause violation against his employer because "[a]n Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes"); *Lerer v. Canario*, No. 19-cv-04568 (VB), 2020 WL 1974212, at *6 (S.D.N.Y. Apr. 23, 2020) ("In New York, an Article 78 proceeding is a perfectly adequate post[-]deprivation remedy." (alteration in original) (quotation marks and citation omitted)).  However, where the deprivation resulted from "established state procedures . . . the availability of postdeprivation procedures will not, *ipso facto*, satisfy due process." *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880 (italics added); *Hudson Shore Assocs. Ltd. P'ship v. New York*, 139 F.4th 99, 113 (2d Cir. 2025) ("When the deprivation in question occurs in the course of an 'established state procedure,' due process is satisfied by the 'combination' of 'some form of pre-deprivation hearing' and a 'post-deprivation remedy' with 'the opportunity to obtain full judicial review.'" (quoting *Rivera-Powell*, 470 F.3d at 466-67)).

The Amended Complaint does not contain any allegations that Greene's decision to end Dong's employment was the result of an established state procedure, which would render a post-deprivation Article 78 procedure, without a pretermination hearing, insufficient to satisfy due

15

process. In fact, the Amended Complaint asserts that Greene acted in violation of state procedures by failing to "perform the legally required analysis under N.Y. Corrections Law Article 23-A," which "prohibits employers from denying employment based on criminal history unless they can demonstrate either a direct relationship between the conviction and the job or an unreasonable risk to property or public safety." Am. Compl. ¶¶ 42-43. It is true that "government actors' conduct cannot be considered random and unauthorized . . . if the state delegated to those actors 'the power and authority to effect the very deprivation complained of . . . [and] the concomitant duty to initiate the procedural safeguards set up by state law,' even if the act in question 'was not . . . sanctioned by state law.'" *Rivera-Powell*, 470 F.3d at 465 (alterations in original) (quoting *Zinermon v. Burch*, 494 U.S. 113, 138 (1990)). Likewise, "the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct for purposes of procedural due process analysis." *Id.* at 465 (alteration in original) (quoting *Velez v. Levy*, 401 F.3d 75, 91-92 & nn. 14 & 15) (2d Cir. 2005)). But Dong does not plead facts sufficient to place Greene in that category. Thus, a post-deprivation hearing meets the requirements of due process. *See, e.g.*, *Henry v. City of New York*, 638 F. App'x 113, 115-16 (2d Cir. 2016) (summary order) (affirming dismissal of due process claims where plaintiffs "merely plead conclusory assertions that defendants were high-ranking officials who are ultimate decision-maker[s] and have final authority over significant matters" (alteration in original) (quotation marks and citation omitted)); *Byrne v. Ceresia*, No. 09-cv-06552 (WHP), 2011 WL 5869594, at *5 (S.D.N.Y. Nov. 22, 2011) (dismissing due process claims when plaintiff did not allege that defendants "were 'ultimate decision-makers' such that their conduct may not be considered 'random and unauthorized'"), *aff'd*, 503 F. App'x 68 (2d Cir. 2012) (summary order).

The cases Dong cites are distinguishable.  In *Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594 (E.D.N.Y. 2011), the district court explained that the termination of a volunteer firefighter could have been pursuant to an established state procedure such that pre-deprivation process was necessary to satisfy due process, because defendants acted pursuant to the authority delegated to them by state law.  *Id.* at 611-12.  There, unlike here, a state statute granted defendants explicit authority to make "regulations governing" the termination at issue such that the court could not say that the actions were random or unauthorized.  *Id.* (quoting N.Y. Gen. Mun. Law § 209-*l* (1) and (4)(a)).  Likewise, in *Swain v. Town of Wappinger*, No. 17-cv-05420 (JCM), 2019 WL 2994501 (S.D.N.Y. July 9, 2019), *appeal dismissed*, 805 F. App'x 61 (2d Cir. 2020) (summary order), it was "undisputed that the [defendant] Town Board was the final decisionmaker when it came to [p]laintiff's termination," and defendants "ha[d] not argued that the Town Board acted outside of its policymaking authority when it terminated [p]laintiff." *Id.* at *7.  Similar circumstances are not present here.

 Due process here therefore only requires that Dong be provided with a post-deprivation remedy.  Dong had the opportunity to bring an Article 78 proceeding to challenge "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed," N.Y. C.P.L.R. § 7803(3), but did not do so.  Thus, Dong fails to allege that he was denied due process.  *See Reynolds v. City of New York*, No. 23-cv-09792 (DEH), 2025 WL 936923, at *4 (S.D.N.Y. Mar. 27, 2025) (dismissing procedural due process claim for termination from employment when the "[p]laintiff makes no allegation that he was deprived of the opportunity to seek post-deprivation relief under Article 78"); *McLaurin v. New Rochelle Police Officers*, 363 F. Supp. 2d 574, 578 (S.D.N.Y. 2005) (finding plaintiff's due

process claim for termination from job after a criminal conviction was barred when he failed to seek an Article 78 proceeding).

## B.    Equal Protection Claim

Dong next alleges that Greene "discriminated against [him] based on his criminal history, without a rational basis or legitimate government interest," which he claims violated the Equal Protection Clause of the Fourteenth Amendment.  Am. Compl. ¶ 56.  The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  To plead a violation, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); *accord Morales v. New York*, 22 F. Supp. 3d 256, 275 (S.D.N.Y. 2014).  The plaintiff must also allege "that the disparity in treatment cannot survive the appropriate level of scrutiny." *Phillips*, 408 F.3d at 129.  Given that criminal history is not a suspect or quasi-suspect classification under the Fourteenth Amendment, *see, e.g.*, *Baker v. Cuomo*, 58 F.3d 814, 820-21 (2d Cir. 1995), *vacated in part on other grounds sub. nom.*, *Baker v. Pataki*, 85 F.3d 919 (2d Cir. 1996); *see also Whitfield v. City of New York*, 760 F. Supp. 3d 126, 142 (S.D.N.Y. 2024) ("[P]ersons convicted of murder are not a protected class under the Fourteenth Amendment."), *reconsideration denied*, No. 20-cv-04674 (JMF), 2025 WL 327312 (S.D.N.Y. Jan. 29, 2025), *appeal dismissed*, No. 25-245, 2025 WL 2238018 (2d Cir. June 2, 2025), and *appeal dismissed*, No. 25-245, 2025 WL 2238018 (2d Cir. June 2, 2025) (summary order), "the equal protection guarantee of the Constitution is satisfied when the government differentiates between persons for

a reason that bears a rational relationship to an appropriate governmental interest," *Able v. United States*, 155 F.3d 628, 631 (2d Cir. 1998); *accord Yifru v. Tietz*, No. 22-cv-01385 (LTS), 2022 WL 956704, at *8 (S.D.N.Y. Mar. 29, 2022).  Accordingly, Greene needed only a rational basis to draw distinctions based on Dong's criminal history.  *See Rosa v. City Univ. of New York*, No. 04-cv-09139 (KMW), 2007 WL 1001416, at *2 n.7 (S.D.N.Y. Apr. 2, 2007) (holding that CUNY defendants need "only a rational reason to draw distinctions based upon a person's [criminal history]" to satisfy equal protection standard), *aff'd*, 306 F. App'x 655 (2d Cir. 2009). Because "[p]rofessors occupy positions of trust at universities[,] [i]t is perfectly rational for [d]efendants to conclude that a professor convicted of a felony lacks the integrity to teach students." *Id.*

Dong does not dispute this but instead proffers in his opposition brief an alternative theory for his equal protection claim under the selective enforcement doctrine.  Greene Opp. at 3-5.  A theory of equal protection based on selective enforcement does not require that a plaintiff be a member of a suspect class.  Instead, to allege a selective enforcement claim, the plaintiff must allege "that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis on impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra*, 48 F.3d at 683).  Selective enforcement "provides protection from adverse governmental action that is not motivated by legitimate governmental objectives." *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (quotation marks and citation omitted).

Greene argues that even under a selective enforcement theory, the Amended Complaint should still be dismissed because Dong does not identify any similarly situated comparators,

Greene Reply at 6-7, or facts to plausibly show that Greene was motivated by ill will or malice. *Id.* at 7-8.  The Court agrees.

To start, Dong fails to state a claim for selective enforcement because he does not identify any similarly situated individual who was treated differently than him.  "[W]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim, and conclusory allegations of selective treatment are insufficient to state an equal protection claim."  *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8 (S.D.N.Y. 2017) (alterations adopted) (citation omitted), *aff'd*, 705 F. App'x 50 (2d Cir. 2017) (summary order); *see also Rivera v. Town of New Fairfield*, No. 22-cv-01874 (VB), 2023 WL 6611062, at *7 (S.D.N.Y. Oct. 10, 2023) (dismissing equal protection claim when the complaint was "completely devoid of any reference to 'similarly situated' or 'substantially similar' individuals." (quotation marks and citation omitted); *Bishop v. Best Buy, Co. Inc.*, No. 08-cv-08427 LBS, 2010 WL 4159566, at *12 (S.D.N.Y. Oct. 13, 2010) (dismissing equal protection claim when the plaintiff "failed to allege or identify a single similarly situated individual who was treated differently by the City Defendants" (alteration adopted) (quotation marks and citation omitted)), *on reconsideration*, 2011 WL 4011449 (S.D.N.Y. Sept. 8, 2011), *and aff'd sub nom.*, *Bishop v. City of New York*, 518 F. App'x 55 (2d Cir. 2013) (summary order); *Famiglietti v. N.Y.C. Dep't of Sanitation*, No. 23-cv-02754 (LDH) (VMS), 2024 WL 4606817, at *3 (E.D.N.Y. Oct. 28, 2024) (dismissing equal protection claim based on selective enforcement when the "[p]laintiff fail[ed] to allege any similarly situated comparators whom [d]efendants treated differently").  Here, the Amended Complaint does not identify any other professor or employee who is similarly situated to Dong and treated differently.

The Amended Complaint also fails to allege an equal protection claim based on selective enforcement because it lacks plausible allegations of "malicious or bad faith intent to injure."

20

*Hu*, 927 F.3d at 91 (quoting *Zahra*, 48 F.3d at 683).  To adequately allege the second element of a selective enforcement claim, a plaintiff must allege "that the governmental actor was motivated by reasons wholly unrelated to any legitimate state objective, a burden few are able to carry." *Colon v. City of New York*, No. 19-cv-10435 (PGG) (SLC), 2021 WL 4427169, at *17 (S.D.N.Y. Sept. 26, 2021) (quoting *Morningside Supermarket Corp. v. New York State Dep't of Health*, 432 F. Supp. 2d 334, 340-41 (S.D.N.Y. 2006)).  Here, nothing in the Amended Complaint suggests the decision to terminate Dong was motivated by malice or ill will towards him.  *See, e.g.*, *Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (summary order) (affirming district court's dismissal of equal protection claim premised on selective enforcement claim when "complaint is devoid of any facts suggesting malice"); *Trabacchi v. Dep't of Educ.*, No. 24-cv-06123 (RPK) (TAM), 2025 WL 2922708, at *22 (E.D.N.Y. July 31, 2025) ("Plaintiff's conclusory allegation that [d]efendants selectively enforced the [m]andate against her, without identifying similarly situated individuals or plausibly alleging that her own treatment was the result of impermissible motivation or discrimination, is not sufficient to state a claim for equal protection violations under this theory.").  Indeed, the Amended Complaint alleges only that Greene terminated Dong's employment "on the basis of Dong's prior misdemeanor conviction," Am. Compl. ¶ 29, and that this was "arbitrary, capricious, and discriminatory," *id.* ¶ 57.  He does not claim that Greene carried ill-will or malice towards him, and indeed Dong alleges that when Goodman relayed that Dong was terminated, he said in the email that "I'm sorry for its contents. I hope you understand why we feel it is necessary." *Id.* ¶ 27.  Dong argues that Greene demonstrated malice because she chose to "permanently bar" him from being rehired in disregard of state law.  Greene Opp. at 4-5 (alteration adopted).  But such allegation does not rise to the level of a plausible claim of malice or ill will, as opposed to a decision based on Dong's criminal history.  *Compare Morningside Supermarket Corp.*, 432 F. Supp. 2d at 341-42 (finding

21

allegations that defendant acted beyond their regulatory authority insufficient to show bad faith); *with Colon*, 2021 WL 4427169, at *17 (finding malice adequately alleged when complaint alleged the motivation for plaintiff's termination was, in part, to "punish [p]laintiff for his role in opposing discrimination" at his workplace).  As such, the Amended Complaint fails to state a claim for violations of the equal protection clause.

*          *          *

For all of these reasons, the Court finds that Dong has failed to state a Section 1983 claim against Greene for violations of his due process or equal protection rights under Counts I and II of the Amended Complaint.  Because the Court finds that Dong has failed to plead his Section 1983 claims, it need not address the additional argument for dismissal based on qualified immunity.[3]

---

[3] The Court will also dismiss the claims against Defendant Goodman for the same reasons that the claims are dismissed against Greene.  "A court may dismiss claims against defendants even when they have not been served or appeared in an action where a plaintiff's claims against them are futile." *Evans v. Atkins*, No. 24-cv-00927 (CS), 2025 WL 2444309, at *13 (S.D.N.Y. Aug. 25, 2025); *Whitfield v. O'Connell*, No. 09-cv-01925 (WHP), 2010 WL 1010060, at *7 n.4 (S.D.N.Y. Mar. 18, 2010) ("A district court has the power to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard."), *aff'd*, 402 F. App'x 563 (2d Cir. 2010) (summary order); *Haping v. 17 Educ. & Tech. Grp. Inc.*, No. 22-cv-09843 (LAK) (SDA), 2023 WL 8716895, at *13 n.9 (S.D.N.Y. July 20, 2023) ("[T]he claims against the Chinese Individual Defendants are appropriately dismissed, even though they have not yet appeared in this action."); *Massey v. City of New York*, No. 20-cv-05665 (GBD) (DF), 2021 WL 4459459, at *4 (S.D.N.Y. Sept. 29, 2021) (dismissing claims against defendants that had yet to be served or appear when plaintiff's claims "are equally futile against them"), *aff'd*, 2021 WL 5234977 (S.D.N.Y. Nov. 9, 2021); *see also Moore v. Booth*, 122 F.4th 61, 70 (2d Cir. 2024) (holding that the district court abused its discretion by entering default judgment against a defendant when the court dismissed "identical claims against the four other [defendants]").  Here, Dong brings the same claims based on the same factual allegations against Greene and Goodman.  *See* Am. Compl. ¶¶ 50-66 (bringing all four counts against all Defendants).  Dong has had a full opportunity to be heard on the alleged pleading deficiencies of these claims.  For the same reasons that the allegations are insufficient to state a claim against Greene, the same claims against Goodman are futile.

### C.    Supplemental Jurisdiction

In addition to his federal law claims, Dong also brings claims under the NYSHRL and NYCHRL in Counts III and IV respectively.  *See* Am. Compl. ¶¶ 59-66.  Having found that Dong has failed to state his federal claims, the Court declines to exercise supplemental jurisdiction over Dong's remaining state and city law claims.  28 U.S.C. § 1367 grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Section 1367(c) permits a court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (noting that courts "should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage").

Here, the Court finds that the interests of judicial economy, convenience, fairness, and comity counsel in favor of declining supplemental jurisdiction.  First, judicial economy favors dismissal because this action has not progressed past the pleading stage.  Second, refiling the action in state court imposes only a minor inconvenience on the parties.  Third, proceeding in state court will not place any of the parties at a disadvantage relative to their current positions in the litigation.  Lastly, "given that only state- [and city-]law issues remain in this case, comity

23

dictates that the Court decline to decide those disputes." *Corley v. Vance*, 365 F. Supp. 3d 407, 463 (S.D.N.Y. 2019), *aff'd sub nom.*, *Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) (summary order); *see also Block v. City Univ. of New York*, No. 23-cv-07715 (NGG) (VMS), 2025 WL 1114738, at *7 (E.D.N.Y. Apr. 15, 2025) ("[A]lthough this case raises no novel or unresolved issues of state law, principles of comity support the court's decision to have a state court adjudicate [plaintiff]'s purely state law claims."). Therefore, the Court declines to assert supplemental jurisdiction over the remaining state and city law claims in Counts III and IV.

## III. Leave to Amend

At the end of his brief in opposition to Greene's motion to dismiss, but not in his brief opposing the CUNY Defendants' motion to dismiss, Dong includes a single sentence that states: "To the extent any aspect of the motions [sic] to dismiss is granted, Plaintiff respectfully requests leave to further amend." Greene Opp. at 8. Dong has already amended his complaint once, and he does not identify any additional facts that he would plead to cure the deficiencies in his due process and equal protection claims. Regarding his constitutional due process claim, he offers no additional facts that he would plead to support a claim that the Article 78 post-deprivation process is insufficient due process. Likewise, with respect to his selective enforcement claim, Dong does not point to any additional facts that he would plead to plausibly demonstrate that the decision to terminate his employment was motivated by ill will or malice. Nor does he suggest potential comparators that could be added to his complaint, and he merely speculates in his opposition brief that he was terminated notwithstanding his outstanding performance record, "while others were presumably hired, retained, and promoted based on their qualifications." *Id.* at 4. This contention does not even address the comparative treatment of those with criminal histories, and, in any event, such speculation about others who were "presumably" treated differently than Dong is insufficient to state a selective enforcement claim. *See, e.g.*, *Panzella*,

24

231 F. Supp. 3d at 9-10 (finding general allegations that other similarly situated businesses were treated differently insufficient where plaintiffs "failed to identify those business or the way in which the City treated those entities better than it treated them"); *Parkash v. Town of Southeast*, No. 10-cv-08098 (VB), 2011 WL 5142669, at *8 (S.D.N.Y. Sept. 30, 2011) (dismissing selective enforcement claim where the plaintiff alleged only "a conclusory reference to unspecified similarly situated persons without accompanying examples"), *aff'd*, 468 F. App'x. 80 (2d Cir. 2012) (summary order).

Given that Dong does not specify any additional facts that he would plead in any amendment to address the deficiencies here, his cursory request to amend is denied. *See, e.g.*, *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend because "a court need not always allow a party to replead simply because it asked" and "denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured") (quotation marks omitted)); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275-76 (2d Cir. 2006) (per curiam) (holding that the district court did not abuse its discretion in denying leave to amend where the request was made only in a footnote with no explanation as to how the complaint's defects would be cured).

## CONCLUSION

For the aforementioned reasons, the CUNY Defendants' motion to dismiss Counts I, II, III, and IV for lack of subject matter jurisdiction under Rule 12(b)(1) is granted, and the claims are DISMISSED without prejudice as to the CUNY Defendants. *See Green v. Dep't of Educ.*, 16 F.4th 1070, 1074 (2d Cir. 2021) ("[D]ismissals for lack of subject matter jurisdiction 'must be without prejudice, rather than with prejudice.'") (quoting *Carter*, 822 F.3d at 54).  Counts I and II are also DISMISSED with prejudice against Greene and Goodman for failure to state a claim under Rule 12(b)(6).

The Court declines to exercise supplemental jurisdiction over the state law claims in Counts III and IV against Greene and Goodman, and those claims are DISMISSED without prejudice.

The Clerk of the Court is respectfully directed to terminate the motions at Dkt. 42 and Dkt. 62 and CLOSE the case.

Dated: May 19, 2026
    New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

26